IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARK RICE d/b/a GAMES TO
REMEMBER,

     Plaintiff,

                                             CIVIL ACTION NO.

v.                                    1:12-CV-03748-JEC

PETEDGE, INC.,

          Defendant.

## ORDER & OPINION

This case is before the Court on defendant's Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer [3]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion to Dismiss or Transfer [3] should be **DENIED.**

## BACKGROUND

This is a trademark infringement and unfair competition case. (Compl. [1] at ¶¶ 16-18.) Plaintiff manufactures and sells "Funky Monkeys" board games through his business, Games to Remember. (*Id.* at ¶ 7.) In connection with his business, plaintiff owns a valid trademark for the name "Funky Monkeys." (*Id.* at ¶ 11.) Plaintiff is

a Georgia resident.  (Rice Decl. [9] at ¶ 2.)

Defendant is a Massachusetts corporation with its principal place of business in Beverly, Massachusetts. (Dow Decl. [3] at ¶ 1.) Defendant manufactures pet-related products and sells them through its website www.petedge.com.  (*Id.* at ¶¶ 2, 8.)  One of defendant's products is the "ZANIES® Funky Monkeys" dog toy.  (*Id.* at ¶ 2.)  All orders for the toy are processed through defendant's Massachusetts headquarters,  and all related documents are located there.  (*Id.* at ¶ 7.)

Defendant does not specifically target Georgia in its advertising or marketing and has no stores or offices in Georgia. (*Id.* at ¶ 8-9.)  However, petedge.com is a typical e-commerce website that any customer can search to purchase defendant's products. PetEdge, http://www.petedge.com/ (last visited Sept. 24, 2013.) Petedge customers enter their shipping information onto the website, allowing defendant to ship their purchases anywhere in the United States.  *Id.*  Georgia residents accounted for 1.27% of defendant's total sales of the Funky Monkeys dog toy in 2011 and 1.91% in 2012. (Dow Decl. [3] at ¶ 5.)  The percentage of net annual sales for all of defendant's products from Georgia customers was between 1 and 2% for the five years leading up to 2012.  (*Id.* at ¶ 6.)

Plaintiff contends that defendant's sale of the Funky Monkeys dog toy in Georgia (1) constitutes trademark infringement and unfair

2

competition under 15 U.S.C. §§ 1114 and 1125 of the Lanham Act and (2) violates Georgia's common law and statutory protections against unfair competition and deceptive trade practices. (Compl. [1] at ¶¶ 21-40). Defendant moves to dismiss the complaint under Federal Rule 12(b)(2) for lack of personal jurisdiction. (Def.'s Br. in Supp. of Mot. to Dismiss ("Def.'s Br.") [3] at 7-15.) Alternatively, defendant moves to transfer the case to Massachusetts under 28 U.S.C. §§ 1404 and 1406. (*Id.* at 16.)

**DISCUSSION**

I.   **MOTION TO DISMISS STANDARD**

Dismissal under Federal Rule 12(b)(2) is required if the Court lacks personal jurisdiction over defendant. FED. R. CIV. P. 12(b)(2). Plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). If defendant presents affidavits or other evidence refuting plaintiff's *prima facie* case, plaintiff must respond with sufficient evidence to support jurisdiction. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Any conflict in the evidence must be construed in favor of plaintiff. *Id.* and *Madara*, 916 F.2d at 1514.

A two-step analysis governs whether a federal court can exercise personal jurisdiction over a non-resident defendant. *Meier,* 288 F.3d

3

at 1269.   First, the court must determine whether the long-arm statute of its forum state allows for the exercise of personal jurisdiction.   *Id.*   If so, the court must then ascertain whether exercising jurisdiction comports with federal due process.   *Id.*   As both requirements are met in this case, defendant's motion to dismiss for lack of personal jurisdiction [3] is **DENIED**.

### A.   <u>The Georgia Long-Arm Statute</u>

Federal courts must interpret a state's long-arm statute in the same manner as the state supreme court.[1]   *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1258 (11th Cir. 2010). Georgia's long-arm statute allows for the exercise of personal jurisdiction over a nonresident corporate defendant who transacts "any business" within Georgia.   O.C.G.A § 9-10-91.   The Georgia Supreme Court has required that this language be construed literally. *Innovative Clinical & Consulting Serv., LLC v. First Nat'l Bank of Ames, Iowa,* 279 Ga. 672, 675 (2005).   Thus, a corporate defendant need not physically enter or establish a presence in Georgia for the state to exercise jurisdiction over it.   *Diamond Crystal Brands, Inc.*, 593 F.3d at 1264.   Transacting "any business" by mail,

---

[1]   Contrary to the assertions of both parties, Georgia's long-arm statute requires an analysis that is separate from the federal due process inquiry.   *See Diamond Crystal Brands*, 593 F.3d at 1259 and *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 279 Ga. 672, 674 (2005).

4

telephone, or the internet will suffice. *Id.*

Defendant's conduct satisfies Georgia's requirement. By defendant's own admission, Georgia customers accounted for between 1 and 2% of its total sales in the last five years, and defendant also sold its Funky Monkeys dog toy in Georgia. (Dow Decl. [3] at ¶¶ 5, 6.) Thus, the plain language of the Georgia long-arm statute permits the Court to exercise personal jurisdiction over defendant. *Id.*

**B.   Federal Due Process**

Federal due process provides a dual system of protection that requires a plaintiff to show that the defendant has "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). *See also Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 630-31 (11th Cir. 1996)(applying the minimum contacts analysis). In addition to minimum contacts, due process requires that the exercise of jurisdiction over the defendant comport with "'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316. *See also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). This second analysis involves balancing several "fairness factors" to ensure that requiring the defendant to appear in the forum is reasonable under the circumstances. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985).

5

1.   Minimum Contacts:  General Jurisdiction

General jurisdiction allows a plaintiff to sue the defendant in the forum state on any claim, regardless of whether the claim is connected to the defendant's activities in the state. *Goodyear*, 131 S. Ct. at 2851.  General jurisdiction requires "continuous and systematic" contacts with the forum.  *Id.*  The Supreme Court established a high bar for the quantity of contacts that rises to the level of "continuous and systematic" in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).  In *Helicopteros*, the non-resident defendant's contacts with the forum state consisted of sending its CEO to the state to negotiate contracts, accepting checks drawn from a bank located in the state, spending "substantial sums" on equipment purchased in the state, and sending employees to train there.  *Id.*  The Court held that this level of contacts did not suffice for general jurisdiction.  *Id.*

Applying *Helicopteros*, it is clear that defendant does not have sufficient contacts to support general jurisdiction in Georgia. Defendant has no physical presence in Georgia, an important factor in determining whether general jurisdiction exists.  *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447-48 (1952)(emphasizing physical presence in the forum as a factor in finding general jurisdiction).  And defendant's minimal amount of internet and

6

catalog sales in Georgia are insufficient to support general jurisdiction.  *Compare Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*, 62 Fed. App'x 322, 337 (Fed. Cir. 2003)(refusing to exercise general jurisdiction over a non-resident defendant whose forum sales accounted for .00008% of its total sales) and *Gator.Com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072, 1074-78 (9th Cir. 2003)(finding general jurisdiction based on millions of dollars of online and catalog sales in the forum state totaling 6% of total sales).[2]

2.   Minimum Contacts:  Specific Jurisdiction

In contrast to general jurisdiction, specific jurisdiction requires a link between the plaintiff's cause of action and the defendant's contacts with the forum state.  *Goodyear*, 131 S. Ct. at 2851.  Specific jurisdiction exists when a defendant (1) purposefully avails itself of contacts in the forum state and (2) there is a "sufficient nexus between those contacts and the litigation." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1267.  These two elements ensure that a defendant is only burdened with litigation in a forum

---

[2]   The Court rejects plaintiff's argument that general jurisdiction arises from the sale of the Funky Monkeys toys by third-party retailers.  (Pl.'s Resp. [9] at 12.)  Plaintiff presents no evidence to rebut defendant's assertion that it has no affiliation with these retailers.  (Suppl. Dow Decl. [10] at ¶ 2.)  Because the unilateral actions of third parties are not relevant to jurisdiction, plaintiff's argument is meritless.  *Helicopteros,* 466 U.S. at 417.

where his "'conduct and connection with the forum . . . are such that
he should reasonably anticipate being haled into court there.'"
*Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220-21 (11th
Cir. 2009)(quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.
286, 297 (1980)).  When a defendant purposefully avails itself of
contacts with the forum state and a sufficient nexus exists between
those contacts and the plaintiff's claim, then the defendant has
"fair warning" that it might be sued in the forum state.  *Burger King
Corp.*, 471 U.S. at 472.

> **a.   Defendant purposefully availed itself of business
>        contacts in Georgia.**

A corporate defendant can purposefully avail itself of minimum
contacts with a forum without ever entering the state or maintaining
a physical presence there.  *Burger King Corp.*, 471 U.S. at 476.
Regardless of the means used, the cornerstone of the purposeful
availment analysis is whether the defendant voluntarily reaches into
the state to do business.  *Id.*  The parties agree that defendant's
internet presence and sales in Georgia are its only relevant contacts
with the state for purposes of specific jurisdiction.  (Pl.'s Resp.
[9] at 12 and Dow Decl. [3] at ¶¶ 5-6, 9.)  The question is whether
those online activities constitute purposeful availment.  (Dow Decl.
[3] at ¶ 8.)

The Eleventh Circuit has not ruled on whether purposeful

8

availment exists when a defendant's only contacts with the forum state are sales made through an e-commerce website. *See Oldfield*, 558 F.3d at 1219, n.26. However, numerous district courts and several circuit courts have addressed this particular issue. *See generally*, 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1073.1 (3rd ed. 2002). Many courts have adopted the influential "*Zippo* sliding scale" test articulated by Judge McLaughlin in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.* to determine whether internet contacts support specific jurisdiction.

Jurisdiction under the *Zippo* sliding scale test depends on the nature of the website. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). At one end of the scale are "interactive" websites where the defendant "clearly does business over the [i]nternet" and thereby purposefully avails itself of business contacts within the forum. *Id.* At the other end of the scale are "passive websites" that merely provide information. *Id.* Because these sites do not direct any commercial conduct toward the forum state, contacts based on such sites alone are not sufficient for purposeful availment. *Id.* In between interactive and passive sites are those where users can interact with the host computer but not necessarily conduct business. *Id.* Jurisdiction in this gray area depends on the website's level of interactivity. *Id.*

9

The Eleventh Circuit has neither adopted nor rejected the *Zippo* test, but at least two judges in this district have applied or at least discussed it in cases dealing with internet contacts. *Oldfield*, 558 F.3d at 1219, n.26.  *See Imageline, Inc. v. Fotolia LLC*, 663 F. Supp. 2d 1367, 1376-77 (N.D. Ga. 2009) (Evans, J.) and *Barton S. Co., Inc. v. Manhole Barrier Sys., Inc.*, 318 F. Supp. 2d 1174, 1177 (N.D. Ga. 2004) (Hunt, J.).  Several other circuits have expressly adopted the *Zippo* test.  *Oldfield,* 558 F.3d at 1219 (noting that the 2nd, 3rd, 4th, 5th, 9th and 10th Circuits have adopted *Zippo*).  However, the Seventh Circuit has declined to apply *Zippo* in a case similar to the present one.  *See Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 759 (7th Cir. 2010) ("the traditional due process inquiry . . . is not so difficult to apply to cases involving [i]nternet contacts that courts need some sort of easier-to-apply categorical test").

Because the *Zippo* test is widely-used, but has not been adopted by this Circuit, the Court will consider the facts at hand under both *Zippo* and the traditional approach.  Under *Zippo*, defendant's website undoubtedly falls on the far end of the "interactive" side of the sliding scale, as it allows users to purchase products and receive them from defendant.  *Zippo Mfg. Co.*, 952 F. Supp. at 1121, 1124. Courts applying *Zippo* have repeatedly found that such sites provide

10

a valid basis for exercising specific jurisdiction.  *See Zing Bros., LLC v. Bevstar, LLC*, No. 2:11-cv-0037 DN, 2011 WL 4901321, at *3 (D. Ut. Oct. 14, 2011)(finding specific jurisdiction where the defendant's website allowed customers to select "Utah" as a destination address, making the site "'something more' than a non-targeted transaction site") and *Young Again Prods., Inc. v. Acord*, 307 F. Supp. 2d 713, 716-17 (D. Md. 2004)(finding specific jurisdiction where the defendant's internet sales to forum state customers accounted for only .02% of its total national sales).

A more traditional analysis yields the same result.  As the Seventh Circuit explained in *Illinois v. Hemi Group LLC*, the focus of the purposeful availment inquiry is on the conduct of the defendant who reaches out to the forum state, not the residents who reach back. *Hemi Grp. LLC*, 622 F.3d at 758.  In *Hemi Group*, the New Mexico defendant sold cigarettes through its website, allowing customers to select their products and then put in their zip code to calculate shipping costs.  *Id.* at 755.  The defendant shipped its products to every state except New York.  *Id.*  The court concluded that Illinois could exercise jurisdiction over the defendant based solely on an Illinois citizen's purchase of three hundred packs of cigarettes (made over several years) through the website.  *Id.*

PetEdge's contacts with Georgia are essentially the same as the

11

defendant's in *Hemi Group*:  a small amount of sales in the forum state made through a website accessible to customers nation-wide. (Dow Decl. [3] at ¶¶ 5-9.)  Defendant's website allows customers to purchase goods and calculate the cost of shipping purchases to any state.   PetEdge,  http://www.petedge.com/.   Significantly,  its shipping information page includes a map of the United States, shaded according to the various shipping times, that includes Georgia.  *Id.* Defendant's creation of a website that allows Georgia customers to directly purchase its products constitutes purposeful availment, as defendant financially benefits from doing business in Georgia.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)(when a  corporation  purposefully  avails  itself  of  the  privilege  of conducting activities in the forum, it is on notice that it may be sued and is therefore subject to personal jurisdiction).

Defendant suggests that its minimal sales in Georgia constitute the  kind  of  random,  fortuitous,  or  attenuated  contacts  that  are insufficient  to  confer  jurisdiction.   (Def.'s  Br.  [3]  at  14.) However, Georgia customers have accounted for between 1 and 2% of defendant's total net sales of Funky Monkeys toys over the past five years, illustrating a consistency that rises above a random sale or two.  *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3rd Cir. 2003)(refusing to find personal jurisdiction over a Spanish company with only two documented sales in the forum state where the

12

sales were initiated by the plaintiff and the merchandise could only be mailed to a Spanish address). Defendant's argument would essentially turn the purposeful availment inquiry into a question of sales percentages, introducing the kind of mechanistic determinations into the jurisdictional inquiry that the Supreme Court warned against in *International Shoe*. *Int'l Shoe Co.*, 326 U.S. at 319. Moreover, the Supreme Court has stated that even one contact can confer jurisdiction if it is significant. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 221-23 (1957).

Defendant also argues that it did not purposefully avail itself of its contacts with Georgia because it does not specifically target Georgia through ads or marketing. (Def.'s Br. [3] at 14-15.) In support of this point, defendant cites *Imageline, Inc. v. Fotolia LLC.* (*Id.*) As Judge Evans held in *Imageline,* the fact that a website does not target the forum state might reinforce an overall lack of sufficient contacts to support purposeful availment. *Imageline, Inc.,* 663 F. Supp. 2d at 1377. But it is not a dispositive factor. *Id.* The website in *Imageline* was not nearly as commercial as defendant's website in this case.

If defendant wished to avoid litigation in Georgia, it could have organized its website so that it wasn't selling its products in this state. *World-Wide Volkswagen Corp.*, 444 U.S. at 297 (stating

13

that defendants can restructure their business if they wish to avoid the possibility of a lawsuit in a certain forum). Having instead opened itself up for business in Georgia through its website, defendant cannot now argue that its low level of sales or lack of ads in the state negates purposeful availment of the state's benefits and privileges. As the Seventh Circuit pointed out, a defendant making this argument "wants to have its cake and eat it, too: it wants the benefit of a nationwide business model with none of the exposure." *Hemi Grp. LLC*, 622 F.3d at 760. Defendant's act of making sales through its website directly to Georgia customers more than compensates for the lack of any targeted ads or marketing.

> **b.   Plaintiff's claims are related to defendant's Georgia contacts.**

A defendant's contacts with the forum state must also sufficiently relate to the plaintiff's cause of action for a court to exercise specific jurisdiction. *Oldfield*, 558 F.3d at 1222. To determine whether a "sufficient nexus" exists between plaintiff's claims and defendant's contacts with Georgia, the Court must conduct "a fact-sensitive analysis consonant with the principle that foreseeability constitutes a necessary ingredient of the relatedness inquiry." *Id.* at 1223. *See also Diamond Crystal Brands, Inc.*, 593 F.3d at 1267. In other words, the Court must consider whether it was reasonably foreseeable, based on defendant's activities in Georgia,

14

that defendant would have to respond in Georgia to the claims asserted by plaintiff. *Oldfield,* 558 F.3d at 1223.

Here, there can be no legitimate dispute that defendant's activities in Georgia are connected to plaintiff's claims. The claims arise directly from defendant's sales of allegedly infringing products, at least some of which occurred in Georgia. *See Sculptchair, Inc.,* 94 F.3d at 625-28, 631 (finding a sufficient nexus to support specific jurisdiction under similar facts). In addition, unfair competition and trademark infringement claims are foreseeable as a result of defendant's Georgia sales. *Id.* at 631 ("[Selling products in a state] is the kind of activity that would lead a person to reasonably expect the possibility of ensuing litigation . . . should some type of dissatisfaction or complications arise."). *See also Oldfield*, 558 F.3d at 1224 (focusing on the foreseeability of plaintiff's claims arising from defendant's contacts).

### 3.   Fairness Factors

At this stage in the analysis, the Court must simply ensure that exercising personal jurisdiction over defendant is reasonable in that it comports with "fair play and substantial justice." *Sculptchair, Inc.*, 94 F.3d at 631. Once a court finds that minimum contacts exist, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render

15

jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477. Defendant has not met that burden.

Courts look to five "fairness factors" to determine whether exercising jurisdiction over a defendant is reasonable: (1) the burden on the defendant of litigating in the forum, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) states' shared interest in furthering fundamental social policies. *Meier,* 288 F.3d at 1276. Focusing on the first factor, defendant argues that it would be unreasonable to litigate this case in Georgia because all of its witnesses and documents are in Massachusetts. (Def.'s Br. [3] at 16.) As plaintiff's witnesses and documents are presumably in Georgia, this factor does not support a finding of unreasonableness. *Diamond Crystal Brands, Inc.*, 593 F.3d at 1274 (requiring a California-based defendant to litigate in Georgia).

Neither do the other factors suggest that litigating this case in Georgia would be unreasonable. Georgia has a strong interest in protecting its citizens from the sale of products that potentially infringe their trademark rights or raise unfair competition concerns. *Sculptchair, Inc.*, 94 F.3d at 632 ("[The forum state has an] obvious interest in stamping out [this] type of nefarious economic

16

chicanery."). Plaintiff also has a strong interest in obtaining relief to ensure that he can maximize his ability to sell his products in Georgia. *Id.* Presumably Georgia and Massachusetts have an equally strong interest in ensuring that commercial actors abide by their statutory and common law rules regarding trade practices, and there is no reason to believe that the litigation would be resolved more efficiently in Massachusetts than in Georgia.

## II.  **DEFENDANT'S MOTION TO TRANSFER**

Defendant alternatively moves for a transfer of venue under 28 U.S.C. § 1404 or § 1406. (Def.'s Br. [3] at 16.) Section 1406 provides for the dismissal or transfer of an action filed in the wrong district. 28 U.S.C. § 1406(a). Section 1404 provides for a transfer when a case has been properly filed in one district but would be more conveniently litigated in another. 28 U.S.C. § 1404. Because the question of whether venue is proper under § 1406 precedes the question of whether the Court can transfer the case under § 1404, the Court will first address defendant's motion under § 1406.

### A.  **Section 1406 Motion**

Pursuant to 28 U.S.C. § 1391(b)(1) and (2), venue is proper where (1) any defendant resides if all defendants are residents of the state or where (2) a substantial part of the events giving rise to the case took place. 28 U.S.C. § 1391(b)(1) and (2). If neither

17

of those options provides for proper venue, then venue is proper in any judicial district where the defendant is subject to the court's personal jurisdiction.  28 U.S.C. § 1391(b)(3).

In this case, venue is proper in this district under the second option.  Plaintiff alleges that defendant sold the Funky Monkeys dog toy to people living in this judicial district, and that the sales of this allegedly infringing toy gave rise to plaintiff's claims. (Compl. [1] at ¶¶ 16-19.)  In the absence of any rebuttal evidence, the Court must accept plaintiff's alleged facts as true for purposes of this motion.  *Madara*, 916 F.2d at 1514.  As defendant provides no rebuttal evidence, the Court finds that venue is proper in this district under § 1391(b)(2).

**B.   Section 1404 Motion**

Finally, defendant argues that this action should be transferred to Massachusetts as the more convenient forum under § 1404(a). (Def.'s Br. [3] at 17-18.)  Section 1404(a) provides for the transfer of a properly filed case "[f]or the convenience of parties and witnesses."  28 U.S.C. § 1404(a).  As the proponent of the transfer motion, defendant bears the burden of showing that Massachusetts would be a more convenient forum for the parties and witnesses.  *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).  Courts have wide latitude in determining whether a case should be transferred

18

under § 1404(a).  *Weber v. Coney*, 642 F.2d 91, 93 (5th Cir. Unit A, Mar. 9, 1981).[3]

In ruling on the transfer motion, the Court must afford plaintiff's chosen forum a substantial degree of deference.  *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)("[T]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.").  This is particularly so where, as here, plaintiff has filed suit in his home state.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981) ("[A] plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum.") and *Acrotube, Inc. v. J.K. Fin. Grp., Inc.*, 653 F. Supp. 470, 477 (N.D. Ga. 1987)(Shoob, J.) ("Absent clear justification, courts in this district have consistently refused to override a plaintiff's choice of forum, especially where, as here, the plaintiff has brought suit in its home district.")

Defendant argues that Massachusetts is more convenient because its witnesses and documents are located there, and flying witnesses and documents to Georgia would be unreasonably inconvenient.  (Def.'s Br. [3] at 16.)  Defendant correctly focuses on witness location is

---

[3]    Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

19

a key factor in considering a transfer of venue. *See Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004) (Thrash, J.)(noting the importance of witness location to transfer considerations). However, defendant ignores the fact that a transfer of venue would subject plaintiff's witnesses to the same inconveniences of travel that defendant seeks to avoid. Under the circumstances, the witness convenience factor is not sufficient to override plaintiff's chosen forum.

Neither does any other factor warrant a transfer. The cost of moving documents and the ease of obtaining witnesses is an equal inconvenience for both parties. While Massachusetts has some interest in ensuring its companies do not sell infringing products, Georgia likely has more of an interest in protecting its citizens from such infringement. Essentially, defendant's motion is a plea to transfer the inconveniences of litigation onto the plaintiff. Venue is proper in this district. A desire to shift the inconveniences of litigation onto plaintiff is not a valid basis for a transfer under § 1404(a). *Robinson*, 74 F.3d at 260. Defendant's motion to transfer [3] is therefore **DENIED.**

### CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant's Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer [3].

20

SO ORDERED, this 25th day of September, 2013.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)